**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

CITIZENS STATE BANK, a
Florida corporation, f/k/a THE
CITIZENS BANK OF PERRY, a
Florida corporation,

      Plaintiff,

v.                                                                    Case No.: 1:10-CV-00224-SPM-GRJ

DIXIE COUNTY, a political
subdivision of the State of Florida

      Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

THIS CAUSE comes before the Court on Defendant's motion to dismiss Plaintiff's

amended complaint and demand for jury trial, filed December 17, 2010 (Doc. 19).  Plaintiff filed

a responsive memorandum to Defendant's motion on February 1, 2011 (Doc. 25).  For the

reasons set forth below, Defendant's motion will be denied in part and granted in part.

### Background

River Shores at Jena owned a parcel of real property in Dixie County.  With the help of

attorney Joseph Lander, River Shores sought and obtained land development approvals from the

Dixie County Board of County Commissioners.  The current controversy arises from the role of

Joseph Lander and his conduct prior to and subsequent to the county's issuance of the approvals.

During certain stages of the approval process, Joseph Lander served as both attorney for

the approving body, Dixie County, and attorney for the applicant, River Shores. In his dual role, Joseph Lander made representations to the county board on behalf of the applicant and also provided a legal opinion, in his capacity as county attorney, that the applicant's development plans complied with the county's comprehensive plan. Ethical considerations aside, Joseph Lander's compliance assessment resulted in the county board issuing development approvals to River Shores.

Upon the issuance of the approvals, River Shores took steps to secure the development of its property. River Shores gave Joseph Lander $820,000.00 in cash to deposit into his trust account with the understanding that the cash bond would secure performance and construction improvements to the property. Once the money was in the trust account, River Shores began construction on the property pursuant to the county's approvals. As time progressed, River Shores requested that $510,000.00 be disbursed from the trust account to cover expenses related to the development of the property. The request was granted, the money was disbursed, and River Shores continued with construction. When it ran into additional funding shortages, River Shores once again turned to Joseph Lander to request money from the trust account. Joseph Lander refused the additional request on the grounds that the county board had instructed him to hold on to the remaining funds until all of the land improvements had been completed. In need of additional funds, River Shores, sought to obtain a loan from Citizens State Bank.

Prior to issuing its loan, Citizens State Bank called Joseph Lander to inquire as to whether the remainder of River Shores' $340,000.00 cash bond remained in the trust account. During the call, Joseph Lander confirmed that the amount was still being held in the account. Around May 1, 2007, Citizens State Bank issued a loan to River Shores in the amount of $850,000.00. In return, River Shores executed and delivered a number of loan documents,

including an assignment of funds and notice of assignment of the $340,000.00 cash bond that supposedly remained in Joseph Lander's trust account.

Citizens State Bank maintains that it made the loan to River Shores in reliance on the value of River Shores' property, taking into consideration the enhancement of value that the land development approvals added, and on the assignment of the $340,000.00 cash bond from the trust account.

Shortly after Citizens State Bank issued its loan to River Shores, things began to unravel. A new attorney replaced Joseph Lander as the county attorney for Dixie County. The new county attorney discovered that the development approvals issued to River Shores did not comply with the county's comprehensive plan. As a result, the new county attorney immediately issued a stop work order and halted all development on River Shores' property. Subsequently, River Shores defaulted on its loan with Citizens State Bank.

In response to the default, Citizens State Bank foreclosed on River Shores' property and sought out additional avenues to make up for its loss. Citizens State Bank took ownership of the property at the foreclosure sale which, it argues, had decreased in value as a result of the loss of the development approvals. Citizens State Bank also sought to recover the $340,000.00 that was assigned as security for the loan and discovered that Joseph Lander did not have the remainder of the cash bond in the trust account; he had already converted the money to personal use.

Citizens State Bank now asserts that it has been denied its property rights without due process through the county's deliberate indifference to the risk it was creating to those who might have an interest in River Shores' property when it failed to address Joseph Lander's improper conduct as county attorney. Citizens State Bank is also suing the county for negligent retention of Joseph Lander as county attorney. Dixie County requests that Citizens State Bank's claims be

dismissed pursuant to Rule 12(b)(6).

## Standard of Review

The pleading requirements set forth in Rule 8(a)(2) require a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a plaintiff needs only to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

When evaluating the merits of a motion to dismiss, a court must accept all reasonable inferences from the complaint and consider all allegations as true. Broward Garden Tenants Ass'n. v. U.S. Envtl. Prot. Agency, 157 F. Supp. 2d 1329, 1337 (S.D. Fla. 2001). Furthermore, a court must view the allegations of the complaint in the light most favorable to the plaintiff. See FED. R. CIV. P. 12(b)(6); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jackson v. Okaloosa Cnty., Fla., 21 F. 3d 1531, 1534 (11th Cir. 1994).

The threshold of sufficiency a complaint must meet in order to survive a motion to dismiss for failure to state a claim is "exceedingly low." Broward Garden Tenants Ass'n., 157 F. Supp. 2d at 1337. Dismissal pursuant to Rule 12(b)(6) is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp., 208 F.3d 1308, 1310 (11th Cir. 2000)(quoting Hison v. King & Spalding, 467 U.S. 69, 73 (1984) (internal citations omitted).

The standard by which a court should judge a motion to dismiss was modified in Bell Atlantic Corp., et al. v. Twombly, 550 U.S. 544, 555 (2007), holding "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . .

[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" By modifying the standard, the Supreme Court emphasized that it was not requiring a fact pleading of specifics, but only enough facts to show that a claim to relief is plausible. Id. As the Supreme Court explained,

> [a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

Id. at 556 (quoting Scheuer, 416 U.S. at 236). The Supreme Court further explained the modified standard in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (U.S. 2009), stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Accordingly, to survive a motion to dismiss, a plaintiff must set forth factual allegations in a manner that does not merely mirror the elements of a claim and suggests that a claim for relief is plausible.

## Matters Outside the Pleadings

When considering a motion to dismiss under Rule 12(b)(6), a court must consider the complaint, any exhibits attached to the complaint, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). A significant exception to the 12(d) conversion rule has been recognized by the Eleventh Circuit, however, and a court has the discretion to consider documents outside the pleadings without converting 12(b)(6) motions

into a motion for summary judgment if the court finds that two conditions are satisfied: (1) the document must be central to the plaintiff's claims and (2) the authenticity of the document must be unchallenged. E.g., Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Moreover, the court may consider public records without converting the motion to one for summary judgment. E.g., Universal Express, Inc. v. U.S. S.E.C., 177 Fed. Appx. 52, 53 (11th Cir. 2006); Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003). "[A] court may take judicial notice of the public record, without converting the motion into one for summary judgment, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Spechler v. Tobin, 591 F.Supp.2d 1350, 1356 (S.D. Fla. 2008). So long as the underlying notice and opportunity to be heard provisions of Rule 56 summary judgments are satisfied, a 12(b)(6) motion does not need to be converted to a motion for summary judgment for the purposes of consideration of extraneous public records. See Horsley, 304 F.3d at 1134.

In its motion to dismiss, Dixie County references the amendment to the contract related to the provision of legal services to the Board of County Commissioners to support its contention that Joseph Lander was not a county employee during the relevant time period and, as a consequence, the county cannot be held liable for any constitutional violations committed by him or for negligent retention. (See Doc. 5, Ex. A). This Court may take judicial notice of the contractual amendment without converting Dixie County's 12(b)(6) motion into a motion for summary judgment because the document satisfies the two conditions set out above. First, the question of whether or not Joseph Lander was employed by the county is central to Citizens State Bank's claims which assert that Dixie County is liable for his conduct as a county attorney. Second, the document is a public record and, as such, is a reliable document whose accuracy

cannot reasonably be questioned.

Citizens State Bank argues that this Court must disregard Dixie County's factual assertion that Joseph Lander was no longer acting as a county official at the relevant times because, as required by the standard of review, the Court must accept the facts as set out by Citizens State Bank in the amended complaint. While this is true, the Court also has the discretion to take judicial notice of public records that center on the plaintiff's allegations if they are properly asserted by the defendant in a 12(b)(6) motion. If there is a discrepancy between the allegations, then, as appropriate under the standard, all possible inferences will be read in favor of the plaintiff at this stage in the litigation proceedings. Therefore, because Dixie County's claims can be read in a manner that includes the relevant time period while Joseph Lander was Dixie County's attorney, the Court declines to adopt Citizens State Bank's argument at this stage in the proceedings. The Court now turns to the substance of Dixie County's motion to dismiss.

## COUNTS I, II, AND III: CITIZEN STATES' § 1983 CLAIMS

In Counts I through III, Citizens State Bank asserts that Dixie County has violated 42 U.S.C. § 1983 by unlawfully depriving Citizens State Bank of its property rights without due process in violation of the 14th Amendment. (See Doc. 11, ¶¶ 36, 37-45).

Citizens State Bank's Count I claim is based upon its allegation that Dixie County "was deliberately indifferent to the risk it was . . . creating for the public in general and specifically those . . . who might purchase, or take as collateral, portions of the property including [Citizens State Bank]" when it took no action to curtail Lander's authority in response to the conflict of interest stemming from Lander's dual representation of the county and the applicant, River Shores, in a land use approval application. (Doc. 11, ¶ 42). As a result, Citizens State Bank alleges that "[i]t is the actions of the County in the exercise of its zoning powers which have

impaired [its] property interest in the real property". (Doc. 25, ¶ 5)

Counts II and III claim § 1983 violations based upon the allegation that Dixie County "was deliberately indifferent to the risk it was . . . creating for the public in general and specifically those . . . who might purchase, or take as collateral, portions of the property including [Citizens State Bank]" when it allowed Lander manage development bonds without oversight. (Doc. 11, ¶ 47, 53). Count II asserts that Dixie County violated § 1983 by failing to supervise or discipline Joseph Lander in the proper handling of cash bonds. (Doc. 11, ¶ 47-48, 53). Count III adds on to Count II, alleging that Dixie County violated § 1983 through the custom and practice of ceding to Joseph Lander the ultimate decision making authority over development bonds and leaving him as Dixie County's "final policy maker" with regards thereto. (Doc. 11, ¶ 54).

It is this conduct that makes up Citizens State Bank's § 1983 claims, and the Court will now address Dixie County's responding arguments.

**Standing**

The threshold inquiry the Court must address before considering the merits of Dixie County's Rule 12(b)(6) motion is whether Citizens State Bank has standing to pursue its civil rights claims against Dixie County. "For the purpose of ruling on a motion to dismiss for want of standing, both the trial and the reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975)(citations omitted).

To establish standing, Citizens State Bank must satisfy three elements.

> First, the plaintiff must have suffered an "injury in fact"- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of-the injury has to

be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)(internal citations omitted). "When standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing." Bischoff v. Osceola Cnty., Fla., 222 F.3d 874, 878 (Fla. 2000).

In the instant case, Dixie County attacks the first and second elements of the three part constitutional standing inquiry. Citizens State Bank argues, in response, that as a mortgagee/ assignee in interest to the property, it has standing to pursue a claim under § 1983 for the deprivation of its property interest in the collateral value of its secured property through improper zoning. Upon evaluating the three elements, this Court finds that Citizens State Bank has standing to bring its constitutional claims against Dixie County.

First, Citizens State Bank sufficiently alleges in its amended complaint that it has suffered an "injury in fact" to a legally protected interest. Dixie County's argument that Citizens State Bank is "impermissibly attempting to assume the rights of River Shores" and claim third party standing is confused. Citizens State Bank is asserting damage to its own interest, the value of the property as collateral to the loan, caused by the Dixie County's acts or omissions relating to Joseph Lander's conduct and the development approval applications.

In a similar case, Citigroup Global Mkts Realty Group v. City of Montgomery, No. 2:09-CV-784-WKW, 2011 WL 147300, at *5 (M.D. Ala. 2011), the city argued that the plaintiff did not have standing because it "[could] not claim an 'interest or right in the Property at the time of demolition' because the demolition occurred prior to . . . assignment of its mortgage to [the

plaintiff].  Accordingly, the City [claimed] that [the plaintiff] did not suffer an 'injury in fact' and, thus, ha[d] no standing to sue."  The court in Citigroup, however, found that the plaintiff had standing because the assignment of the mortgage gave the plaintiff an interest in the property.  Id.  In the instant case, Citizens State Bank's protected interest is comparable to the plaintiff's in Citigroup as it amounts to the value secured as collateral for the loan that Citizens State Bank issued to River Shores.

The second element of standing states that "there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Lujan, 504 U.S. at 560-61.  Citizens State Bank alleges that Dixie County's deliberate indifference to the actions of Lander, acting as county attorney, resulted in improper approvals being issued and resulted in harm to Citizens State Bank's security interest in the mortgaged property.  As required under the applicable standard, if the plaintiff sets forth sufficient allegations that the conduct complained of caused harm to a legally protected interest, then the plaintiff has established the second requisite element of standing.  In the instant case, Citizens State Bank establishes this element by alleging that Dixie County's deliberate indifference with regards to the constitutional rights of those having an interest in the property diminished Citizens State Bank's property right in the value of the secured property.  Therefore, the Court finds that Plaintiff has sufficiently alleged the second element to establish standing.

With respect to the third element, Dixie County does not contest that Citizens State Bank has sufficiently established the likelihood that the injury will be redressed by favorable decision.  It is evident from the amended complaint that Citizens State Bank will have redress for the

deprivation of its property interest if the Court finds favorably for Citizens State Bank.

Accordingly, this Court finds that Citizens State Bank has standing to bring a § 1983 claim

against Dixie County for deprivation of a property interest. TheCourt now turns to Dixie

County's argument that Citizens State Bank's complaint should be dismissed for failure to state a

claim.

## Failure to State a Claim

In Counts I, II, and III Citizens State Bank alleges that it has been denied its property

rights, without due process of law, in violation of the Fourteenth Amendment of the United

States Constitution. The Due Process Clause of the Fourteenth Amendment provides, "nor shall

any State deprive any person of life, liberty, or property, without due process of law." U.S.

CONST. amend. XIV, § 1. Embodied in the protection of the Fourteenth Amendment is the

protection of both procedural and substantive due process.

To protect the rights guaranteed by the Fourteenth Amendment against unlawful

government invasion, Congress enacted 42 U.S.C. § 1983. Section 1983 states, in part, that

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage . . . subjects, or causes to be subjected,
> any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983. While § 1983 protects against acts committed by persons acting under the

color of law, the Court must be careful to consider the alleged violation to determine whether it

has harmed a constitutionally protected interest. Rymer v. Douglas Cnty., 764 F.2d 796, 800

(11th Cir. 1985). The Supreme Court has held that "a municipality cannot be held liable *solely*

because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under §

1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 691 (1978). Furthermore, in Monell, the Supreme Court held that § 1983 liability is only appropriate if the plaintiff can establish that a government employee's unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." Id. at 690-691.

Citizens State Bank asserts a claim for relief to for the protection of its property right by alleging "that the County was 'deliberately indifferent' to the risk of loss it was creating by allowing the flagrant violations of law and ethics that were being committed by Lander." (Doc. 25, ¶ 7). To establish deliberate indifference on the part of Dixie County, Citizens State Bank must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir, 1998)(citations omitted). The Supreme Court explained when a municipality may be liable under § 1983 for failure to take action, such as failure to supervise, in City of Canton, Ohio v. Harris, 489 U.S. 378 (1989).

> Only where a municipality's failure to train its employees in a relevant respect evidences "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" . . . Only where a failure to train reflects a deliberate or "conscious" choice by a municipality-a "policy" as defined by our prior cases- can a city be liable for such failure under § 1983.

Id. at 389.

In the instant case, Citizens State Bank alleges that Dixie County should have known of the obvious conflict of interest present when Joseph Lander was acting as both county attorney

and attorney for River Shores before the county board.  Because the county arguably had notice

of the conflict of interest and chose to do nothing about it, Citizens State Bank argues that Dixie

County was deliberately indifferent to the harm that this dual representation might cause to third

parties' constitutional interests.  Additionally, Citizens State Bank alleges that Dixie County was

deliberately indifferent to the risk that Joseph Lander might harm third parties' interest in the

property because the board failed to supervise or discipline Joseph Lander in the proper handling

of cash bonds.

At this stage in the proceedings, it is improper to grant dismissal of Citizens State Bank's

§ 1983 claims.  Citizens State Bank has met the low threshold requirement of pleading facts

sufficient to suggest that a cause of relief is plausible for its constitutional claims.

## COUNT IV: NEGLIGENT RETENTION

### Sovereign Immunity

Citizens State Bank alleges that Dixie County negligently retained attorney Joseph Lander

in the position of county attorney while knowing or having reason to know that Joseph Lander

was unfit to perform the duties of county attorney, failed to take corrective action against Joseph

Lander to protect Citizens State Bank from the harm it suffered, and that the resulting harm was

foreseeable in light of the particular unfitness of Joseph Lander.  (Doc. 11, p. 11).  Citizens State

Bank bases its allegation on Lander's criminal and ethical misconduct arising from mail fraud

and money laundering.  Dixie County asserts it is entitled to sovereign immunity from the tort

claim asserted by Citizens State Bank.

Section 768.28(9) of the Florida Statutes states that

> [t]he state or its subdivisions shall not be liable in tort for the acts
> or omissions of an officer, employee, or agent committed while
> acting outside the course and scope of her or his employment or

committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

In analyzing whether sovereign immunity is appropriate under the circumstances, it is necessary to determine first whether "there is a common law or statutory duty of care that would have been applicable to an individual under similar circumstances." Storm v. Town of Ponce Inlet, 866 So.2d 713, 716 (Fla. 5th DCA, 2004). Without a duty, there is no need to determine whether sovereign immunity applies. Id. Next, the Court must inquire as to whether the governmental body was exercising a discretionary decision which is protected by sovereign immunity or whether it was exercising an operational decision which is not covered by immunity. See Id.; Avallone v. Bd. of Cnty. Com'rs of Citrus Cnty., 493 So.2d 1002, 1005 (Fla. 1986).

The Court now addresses the existence of a duty. In Florida, it is well settled that an employer can be held liable for the tort of "negligent retention . . . of an incompetent, dangerous agent [when] the employer knew or should have known of the agent's or servant's incompetence . . . and the likelihood or foreseeability that such agent or servant would injure a third person, growing out of the employment status". Storm, 866 So.2d at 716; see also Mallory v. O'Neil, 69 So.2d 313 (Fla. 1954). Furthermore, the duty to protect third parties from the negligent retention of employees extends to governmental actors, as explained in School Bd. of Orange Cnty. v. Coffey, 524 So.2d 1052, 1053 (Fla. 5th DCA, 1988):

> The school board has a common law duty to protect others from the result of negligent . . . retention which duty is identical to the duty upon private employers who hire, retain, or supervise employees whose negligent or intentional acts in positions of employment can foreseeably cause injuries to third parties.

See also Brantley v. Dade Cnty. School Bd., 493 So.2d 471 (Fla. 3d DCA 1986); Willis v. Dade

Cnty. School Bd., 411 So.2d 245 (Fla. 3d DCA), *rev. denied*, 418 So.2d 1278 (Fla. 1982). Thus,

Dixie County has a duty to protect third parties from foreseeable harm caused by an employee

which the employer knows or has reason to know is unfit for his or her duties.

Having established the existence of a common law duty, it is now necessary to turn to the

second prong of inquiry, whether Dixie County was exercising a discretionary decision or

whether it was exercising an operational decision when it retained Joseph Lander as county

employee. The Florida Supreme Court, in Commercial Carrier Corp. v. Indian River Cnty., 371

So.2d 1010, 1020 (Fla. 1979), set forth a four part test for determining whether a government

action is entitled to sovereign immunity as part of a discretionary function:

> (1) Does the challenged act, omission, or decision necessarily
> involve a basic governmental policy, program, or objective? (2) Is
> the questioned act, omission, or decision essential to the realization
> or accomplishment of that policy, program, or objective as opposed
> to one which would not change the course or direction of the
> policy, program, or objective? (3) Does the act, omission, or
> decision require the exercise of basic policy evaluation, judgment,
> and expertise on the part of the governmental agency involved? (4)
> Does the governmental agency involved possess the requisite
> constitutional, statutory, or lawful authority and duty to do or make
> the challenged act, omission, or decision? If these preliminary
> questions can be clearly and unequivocally answered in the
> affirmative, then the challenged act, omission, or decision can,
> with a reasonable degree of assurance, be classified as a
> discretionary governmental process and nontortious, regardless of
> its unwisdom. If, however, one or more of the questions calls for
> or suggests a negative answer, then further inquiry may well
> become necessary, depending upon the facts and circumstances
> involved.

This second prong of inquiry does not require extensive analysis as it is clear that the county was

acting under its discretionary decision-making power when it retained Joseph Lander as county

attorney. "The decision of a governmental executive . . . to hire or fire a top head of an agency is

necessarily fundamental, and involves the exercise of governmental discretion at the highest

level.  This is precisely the area into which, under the separation of powers doctrine, courts must not intervene."  Storm, 866 So.2d at 719.

Having determined that the decision of the board is a discretionary decision, the Court finds that Dixie County is entitled to sovereign immunity on Citizens State Bank's negligent retention claim.  Accordingly, it is

ORDERED AND ADJUDGED that Defendant's motion to dismiss Plaintiff's amended complaint (Doc. 19) is granted as to Count IV for negligent retention and denied as to Counts I, II, and III.

DONE AND ORDERED this seventh day of April, 2011.

s/ Stephan P. Mickle
Stephan P. Mickle
Chief United States District Judge